UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| Equal Employment Opportunity Commission, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 13-cv-1240<br>)<br>) |
| Star Transport, Inc., | )<br>) |
| Defendant. | ) |

**RESPONSE TO PLAINTIFF EEOC'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Star Transport, Inc. ("Star"), responds to Plaintiff, Equal Employment Opportunity Commission's ("EEOC") Motion for Summary Judgment, stating:

**A.    Introduction**

In August 2009, Star terminated the employment of Mahad Abass Mohamed ("Mohamed") and Abdikarim Hassan Bulshale ("Bulshale"). Mohamed and Bulshale worked as truck drivers. Each had been dispatched to transport a cargo of beer, and each refused.

In May 2013, the EEOC filed this action against Star alleging that the termination of Mohamed's and Bulshale's employment constituted an unlawful employment practice because Star had failed to accommodate Mohamed's and Bulshale's Islamic religious beliefs.

In the prayer for relief in its Complaint, the EEOC sought equitable relief, compensatory damages for Mohamed and Bulshale, and punitive damages for Mohamed and Bulshale. (Complaint, Docket #1, pp. 3-4). The equitable relief sought by the EEOC includes a permanent injunction against employment practices which discriminate on the basis of religion, an order that Star implement policies related to the provision of equal employment opportunities for its employees regardless of religion, back pay, and an order prohibiting Star from discriminating

against persons engaging in protected activity under Title VII of the Civil Rights Act of 1964. (*Id.*, ¶¶ A, B, C, and G). The EEOC seeks compensatory damages for Mohamed and Bulshale for pecuniary losses such as medical and job search expenses and non-pecuniary losses such as emotional pain, suffering, loss of enjoyment of life, humiliation, and inconvenience. (*Id.,* ¶¶ D, E). Additionally, the EEOC seeks punitive damages against Star for Mohamed and Bulshale for Star's alleged malicious and reckless conduct. (*Id.,* ¶ F).

In the EEOC's Motion for Summary Judgment, it seeks judgment "… on the issue of Defendant Star Transport's liability and the Charging Parties' mitigation efforts because there are no disputed material facts which should be decided by a jury. This case should then proceed to trial on the issue of damages." (Motion, pp. 2-3; Motion, p. 21). The EEOC does not claim in its Motion that it is entitled to summary judgment on the issue of entitlement to equitable relief. Whether the EEOC, Mohamed, or Bulshale are entitled to equitable relief involves additional and different considerations than the issue of whether Mohamed and Bulshale are entitled to "damages."

In its Motion, the EEOC does not distinguish between compensatory and punitive damages. As to the compensatory damages sought for Mohamed and Bulshale in subparagraphs D and E of the EEOC's prayer for relief and the affirmative defense of failure to mitigate such damages, Star admits the EEOC's Motion. With respect to punitive damages, however, by judicial admissions in its Motion, the EEOC has established that under governing law, Star is not liable for punitive damages, as it lacked the requisite knowledge that its conduct could be illegal. Thus, after giving the EEOC an appropriate opportunity to address the issue, Star requests that summary judgment be entered in its favor determining that the undisputed material facts show that it has no liability for punitive damages to Mohamed or Bulshale.

B.     **Response to Undisputed Material Facts**

**(1)    Undisputed Material Facts.**

The following facts from the EEOC's Motion are conceded to be undisputed and material.

2.     Mr. Mohamed is a Muslim.  He studied the Koran at a madrassah in Kenya for seven years.  Exh. 19, Mohamed Tr. 37:12-38:12.

5.     Mr. Bulshale is a Muslim.  He studied the Koran at a madrassah in Somalia.  Exh. 20, Bulshale Tr. 38:1-3; 172:21-173:20.

7.     Mr. Mohamed's religious beliefs prohibit him from transporting alcohol.  Exh. 19, Mohamd Tr. 140:9-17.

8.     Mr. Bulshale's religious beliefs prohibit him from transporting alcohol.  Exh. 20, Bulshale Tr. 214:9-14.

9.     Mr. Bulshale started working for Star Transport on January 15, 2008.  Exh. 2; Exh. 3; Exh. 4, p. 2.

10.    Mr. Mohamed started working for Star Transport on April 28, 2009.  Exh. 5; Exh. 6, p. 1; Exh. 11.

11.    Mr. Mohamed informed Star Transport of his religious prohibition against transporting alcohol when he refused to transport a load containing beer on July 28, 2009.  Exh. 21, Star Transport 30(b)(6) Tr. 49:23-50:8; Exh. 6, p.2; Exh. 7.

12.    Mr. Bulshale informed Star Transport of his religious prohibition aginst transporting alcohol when he refused to transport a load containing beer on August 8, 2009.  Exh. 8, p. 1; Exh. 11.  Star Transport denied the accommodation request.  Exh. 12, p. 2.

13. Star Transport understood that when Mr. Bulshale and Mr. Mohamed informed the company of their prohibition against transporting alcohol, that they were communicating their need for a religious accommodation. Exh. 21, Star Transport 30(b)(6) Tr. 106:10-107:1.

14. Star Transport could have accommodated Mr. Mohamed's and Mr. Bulshale's religious prohibition against transporting alcohol. Exh. 21, Star Transport 30(b)(6) Tr. 50:19051:1; Exh. 9, p. 1.

15. Star Transport's application of its "forced dispatch" policy was the stated reason for Mr. Mohamed and Mr. Bulshale's termination. Exh. 4, p. 1; Exh. 9, p. 5.

16. Star Transport's "forced dispatch" policy is only mentioned once in tis employee handbook. Exh. 21, Star Transport 30(b)(6) Tr. 18:22-20:2; Exh. 9, p. 5; Exh. 10.

17. Employees who violated Star Transport's "forced dispatch" policy could be subject to the company's progressive discipline policy. Exh. 10; Exh. 22, Briggs Tr. 31:4-17, 38:6-20.

18. No other drivers were discharged for violating Star Transport's "forced dispatch" policy in the 12 months before Mr. Aden's termination. Exh. 9, p. 6.

19. Mr. Mohamed was not terminated based on the costs associated with his failure to deliver alcohol. Exh. 21, Star Transport 30(b)(6) Tr. 49:6-9; Exh. 22, Briggs Tr. 71:25-72:21.

20. Star Transport terminated Mr. Bulshale and Mr. Mohamed on August 11, 2009. Exh. 21, Star Transport 30(b)(6) Tr. 82:5-83:8; Exh. 3; Exh. 4; Exh. 7; Exh. 8, p. 1 ; Exh. 9, p. 1.

21. The recommendations to terminate Mr. Bulshale and Mr. Mohamed were made on August 11, 2009. Exh. 22, Briggs Tr. 89:25-91:13; Exh. 2; Exh. 11.

22. Mr. Mohamed and Mr. Bulshale had not been disciplined by Star Transport for any reason prior to their refusal to transport alcohol for religious reasons. Exh. 21, Star Transport 30(b)(6) Tr. 93:9-12.

23. Star Transport terminated Mr. Mohamed because he "refused beer [load] due to religious convictions." Exh. 11.

24. Previous job performance, attendance and/or low production were not factors in Mr. Mohamed's termination. Exh. 22, Briggs Tr. 67:14-68:14; Exh. 9, p. 6.

25. Star Transport has not conducted any investigation into the cost associated with Mr. Mohamed's or Mr. Bulshale's failure to transport alcohol. Exh. 21, Star Transport 30(b)(6) Tr. 48:17-49:9, 116:20-117:15; Exh. 12.

26. Prior to their terminations, an after they notified Star Transport of their religious prohibition against transporting alcohol, Star Transport made no effort to discuss with Mr. Mohamed or Mr. Bulshale accommodations for their religious beliefs. Exh. 21, Star Transport 30(b)(6) Tr. 101:14-20.

27. Star Transport claims that Mr. Bulshale and Mr. Mohamed failed to "provide[] a valid basis to refuse the load." Exh. 13, Defendant's Answer to EEOC Interrogatory No. 5.

28. According to Star Transport, "[a] driver's refusal to drive a load for a religious reason would present an undue hardship unless there were special circumstances." Exh. 13, Defendant's Answer to EEOC Interrogatory No. 6.

29. Star Transport has no written policy allowing employees to request reasonable accommodations for their religious practices. Exh. 21, Star Transport 30(b)(6) Tr. 104:19-105:14.

30. Star Transport employs a progressive discipline policy for actions by employees that have a negative effect on safety or productivity. The progression is as follows: 1st offense is a verbal reprimand, 2nd offense is a written reprimand and possible suspension, 3rd offense release from employment. Exh. 14.

31. Prior to Mr. Mohamed and Mr. Bulshale's terminations, Star Transport did not inform them that they would be terminated for refusing the load containing alcohol. Exh. 21, Star Transport 30(b)(6) Tr. 115:14-116:10.

32. Miller Brewing Company was Star Transport's only client that required the transportation of alcohol. Exh. 13, Defendant's Answer to EEOC Interrogatory No. 13.

33. Star Transport has no evidence of any costs or fines levied against it by Miller Brewing Company for Mr. Mohamed or Mr. Bulshale refusing to transport the beer loads. Exh. 21, Star Transport 30(b)(6) Tr. 116:20-117:15.

34. Star Transport's computer system allows it to attach notes to a driver's code that would alert the dispatcher to any restrictions or accommodations needed for the driver. Exh. 22, Briggs Tr. 194:15-195:16.

35. In 2014, another driver at Star Transport informed the company that he could not transport alcohol due to his religion. Star Transport allowed him to continue driving for the company and agreed to not assign him loads with alcohol. Exh. 21, Star Transport 30(b)(6) Tr. 95:18-101:5.

36. In 2007, Star Transport carried 66,130 total loads, of which it could not identify a single load containing alcohol. In 2008, Star Transport carried 61,138 total loads, of which only one (1) contained alcohol. In 2009, Star Transport carried 15,636 loads, of which only 474 contained alcohol. Exh. 13, Defendant's Answer to EEOC Interrogatory No. 12.

37. It took 2.25 hours for a replacement driver to arrive at Miller Brewing Company to carry the load originally assigned to Mr. Mohamed. It took 3.25 hours for a replacement driver to arrive at Miller Brewing Company to carry the load originally assigned to Mr. Bulshale. Exh. 13, Defendant's Answer to EEOC Interrogatory No. 11(b).

6

39. In 2009, Star Transport had 1,150 employees. Exh. 13, Defendant's Answer to EEOC Interrogatory No. 17.

40. In December 2008 or January 2009, Edward Briggs became Star Transport's Human Resources Manager. Exh. 22, Briggs Tr. 13:12-13:18.

41. Mr. Briggs received no training before or after becoming the Human Resources Manager. Exh. 22, Briggs Tr. 19:10-25.

42. As Human Resources Manager, Mr. Briggs received no training from Star Transport on antidiscrimination laws. Exh. 22, Briggs Tr. 25:15-17.

43. Mr. Briggs, Star Transport's Human Resources Manager at the time of Mr. Mohamed and Mr. Bulshale's terminations, was not aware of any exceptions to Star Transport's "at will" employment policy, nor had he ever heard of Title VII of the Civil Rights Act. Exh. 22, Briggs Tr. 34:11-35:6.

44. Mr. Briggs "didn't have an understanding" of the company's obligation to accommodate an employee's religious beliefs, and he never researched the matter. Exh. 22, Briggs Tr. 27:17-28:3.

45. Mr. Briggs never provided a religious accommodation during his tenure as Human Resources director. Exh. 22, Briggs Tr. 28:4-7.

46. Gene Ozella was Star Transport's personnel manager from 2009 to 2011. As personnel manager Mr. Ozella received no training from Star Transport on antidiscrimination laws. Exh. 23, Ozella Tr. 7:18-8:15, 12:12.

47. Gene Ozella recommended to Mr. Briggs that Mr. Mohamed and Mr. Bulshale be terminated. Exh. 22, Briggs Tr. 76:21-80:1.

48. Star Transport did not consider it a violation of the "forced dispatch" policy if, after a load had been assigned, a driver fell ill or had a medical condition preventing him/her from completing the assigned load. Exh. 22, Briggs Tr. 39:24-43:15.

49. Star Transport did not consider it a violation of the "forced dispatch" policy if, after a load had been assigned, a driver could not deliver a load because of Department of Transport regulations. Exh. 22, Briggs Tr. 39:24-43:15.

50. Exceptions to the "forced dispatch" policy included the following: family emergency, illness, sickness, illness or sickness in the family, and bereavement. Exh. 23, Ozella Tr. 27:12-28:5.

51. Star Transport has innovative software and designated dispatchers that allow it to find replacement drivers. Exh. 22, Briggs Tr. 43:19-44:25.

52. Star Transport did not investigate the allegations of discrimination and termination of Mr. Mohamed. Exh. 22, Briggs Tr. 66:3-15; Exh. 9, p. 5.

53. Gene Ozella and Edward Briggs had the authority to accommodate Mr. Mohamed and Mr. Bulshale. Exh. 22, Briggs Tr. 68:15-69:2; Exh. 9, p. 6.

54. There were occasions where employees violated the "forced dispatch" policy and they were not terminated. Exh. 23, Ozella Tr. 26:12-23.

55. Star Transport has no written policy explaining any possible exceptions to the company's "forced dispatch" policy. Exh. 23, Ozella Tr. 32:8-21.

56. Star Transport continued to assign Mr. Mohamed loads between the date that he refused the beer load, July 28, 2009, and the date of his termination, August 11, 2009. Exh. 23, Ozella Tr. 137:17-145:15.

8

57.     Star Transport "was always swapping" loads between drivers, sometimes with no notice. Briggs Tr. 221:5-24. Such swaps would happen on a daily basis. Exh. 22, Briggs. Tr. 234:10-235:20.

58.     If a driver is unable to deliver a load for religious reasons, they should first contact their dispatcher to notify him/her of the situation. Exh. 22, Briggs Tr. 134:7-135:3.

59.     Both Mr. Aden and Mr. Mohamed called their dispatcher when they found out that they were assigned a load containing alcohol. Exh. 22, Briggs Tr. 135:10-14.

61.     It took Mr. Bulshale one month to find employment after being terminated by Star Transport. Exh. 20, Bulshale Tr. 57:1-7.

62.     It took Mr. Mohamed one month to find employment after being terminated by Star Transport, Exh. 19, Mohamed Tr. 332:8-12.

63.     It can take Star Transport up to a day to find a replacement driver. Exh. 21, Star Transport 30(b)(6) Tr. 141:15-142:4.

**(2)    Disputed Material Facts.**

None.

**(3)    Disputed Immaterial Facts**

38.     Since 2007, Star Transport has never been unable to assign a load because there were no drivers available. Exh. 13, Defendant's Answer to EEOC Interrogatory No. 15.

**Response:**    Material facts are those that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Thus, material facts are those that bear directly on the legal issue raised by the motion for summary judgment. CDIL–LR 7.1(D)(1)(b).

The EEOC's fact No. 38 is immaterial because whether Star was never unable to assign a load since 2007 because there were no drivers available is not relevant to proof of any fact that might affect the outcome of this case. Fact No. 38 is disputed because the record citation provided by the EEOC does not support the asserted fact. Star's answer to EEOC's Interrogatory No. 15 (Ex. 13 to the EEOC's Motion) does not admit the asserted fact, but rather states: "Defendant does not have that information."

60.     In 2009, Star Transport reported $87,571,406 in gross profit.  Exh. 15.  In 2010, Star Transport reported $99,240,039 in gross profit.  *Id.*  In 2011, Star Transport reported $112,962,847 in gross profit.  *Id.*  In 2012, Star Transport reported $110,752,630 in gross profit. *Id.*

**Response:**    What the EEOC characterizes as "gross profit" is actually gross revenue. The EEOC's support for asserted fact No. 60 is Exhibit 15 to its Motion which includes copies of information from Star's tax returns on IRS Form 1120S for 2009 through 2012. Gross receipts on line 1 of each return are shown as being identical to gross profits because, not being a seller of inventory, Star had no cost of goods sold to deduct from gross receipts to arrive at gross profit.

The EEOC's Exhibit 15 shows that instead of having any profit in 2009 through 2012, Star actually *lost* the following amounts:  2009 - $21,171,419; 2010 - $13,899,162; 2011 - $6,225,992; 2012 - $2,013,468.  That is because a gross profit is simply the difference between sales and cost of goods sold, but does not deduct other expenses. *Blacks Law Dictionary* (Sixth Ed.), p. 1211. This is easily seen by looking at IRS Form 1120S for each of the years at issue (http://apps.irs.gov/app/picklist/list/priorForm Publication.html - last viewed January 20, 2015). Those forms show that the figures used by the EEOC as "profit" do not take into account at least the following expenses:  compensation of officers; salaries and wages; repairs and maintenance;

10

bad debt; rents; taxes and licenses; interest; depreciation; advertising; pension and profit sharing plans; and employee benefit programs.

The EEOC's misleading use of "gross profit" is disputed and results in its asserted fact No. 60 not including information that is relevant to proof of any fact that might affect the outcome of this case.

**(4)      Undisputed Immaterial Facts**

1.      Mahad Abass Mohamed legally changed his name from Mahad Abdi Aden on April 19, 2011 when he became a naturalized citizen of the United States. Exh. 19, Mohamed Tr. 4:1-5:3; 21:24-22:10; Exh. 1.

**Response:**   This asserted fact is not relevant to proof of any fact that might affect the outcome of this case.

3.      Mr. Mohamed lived as a Somali refugee in Kenya for twelve (12) years before being resettled to the United States in 2006. Exh. 19, Mohamed Tr. 22:13-23:9.

**Response:**   This asserted fact is not relevant to proof of any fact that might affect the outcome of this case.

4.      Abdikarim Hassen Bulshale legally changed his name from Abdikarim Abdallah Ismail in 2010 when he became a naturalized citizen of the United States. Exh. 20, Bulshale Tr. 4:1-23; 26:7-21.

**Response:**   This asserted fact is not relevant to proof of any fact that might affect the outcome of this case.

6.      Mr. Bulshale spent seven (7) years in an Ugandan refugee camp before being resettled to the United States in 2001. Exh. 20, Bulshale Tr. 41:3-42:17.

**Response:** This asserted fact is not relevant to proof of any fact that might affect the outcome of this case.

**(5) Additional Material Facts**

None.

### C. Argument

**(1) Star admits liability for compensatory damages.**

Star elects to admit the EEOC's Motion to the extent that it seeks a determination of liability for the compensatory damages specified in paragraphs D and E in the EEOC's prayer for relief and a finding against Star on the affirmative defense of failure to mitigate such damages. (Complaint, Docket #1, p. 4). Back pay, however, is not included within compensatory damages under Title VII. 42 U.S.C. §1981a(b)(2).

**(2) Summary judgment should be entered in favor of Star on the issue of punitive damages.**

Upon the filing of a summary judgment motion, the court may grant summary judgment to a nonmovant after giving the movant notice and a reasonable opportunity to respond. Fed.R.Civ.P. 56(f)(1). As the uncontested material facts submitted by the EEOC, which constitute judicial admissions, establish that Star is not liable for punitive damages, the Court should grant summary judgment to Star on that issue.

In order for an employer to be liable in punitive damages under Title VII, the employer must at least discriminate in the face of a perceived risk that its actions will violate federal law. *Kolstad v. American Dental Association,* 527 U.S. 526, 536 (1999). This is consistent with the traditional view that punitive damages are reserved for cases where the wrongfulness of the defendant's conduct is apparent to the person who engages in it, and not just to a lawyer. *Soderbeck v. Burnett County, Wisconsin*, 752 F.2d 285, 291 (7th Cir. 1985). In the absence of

knowledge that conduct is wrongful, punitive damages would not have the desired deterrent effect. *Id.* Thus, a positive element of conscious wrongdoing is always required for there to be liability for punitive damages. *Kolstad v. American Dental Association, supra*, 527 U.S. at 538. In view of the foregoing, the United States Supreme Court recognized that "[t]here will be circumstances where intentional discrimination does not give rise to punitive damages liability under this standard. In some instances, the employer may simply be unaware of the relevant federal prohibition." *Id.* at 536-37. This is such a case.

In its statement of undisputed material facts, the EEOC asserts that Star's human resources manager and personnel manager received no training on anti-discrimination laws; that the human resources manager had not ever heard of Title VII of the Civil Rights Act; that the human resources manager did not have an understanding of Star's obligation to accommodate an employee's religious beliefs, and had never researched the matter; that the human resources manager never provided a religious accommodation while at Star; and that Star had no written policy allowing employees to request reasonable accommodations for their religious practices. (EEOC's Undisputed Material Facts Nos. 29, 40-46). It was the personnel manager who recommended to the human resources manager that Mohamed and Bulshale be terminated as employees. (EEOC's Undisputed Material Fact No. 47). The EEOC further asserts that Star's human resources manager believed that there could be no exception to Star's "at will" employment policy. (EEOC's Undisputed Material Fact No. 43). These assertions by the EEOC constitute binding judicial admissions. *E.g., Pierce v. City of Chicago,* 2012 WL 401026, *4 (ND Ill. 2012).

The EEOC has established conclusively that Star did not have even the foggiest notion that in terminating the employment of Mohamed and Bulshale for their refusals to transport beer after being dispatched to do so violated any federal law. Therefore, the standard set forth in *Kolstad* by

13

the United States Supreme Court requiring a positive element of conscious wrongdoing before punitive damages may be imposed simply cannot be met. It would be appropriate for the Court to enter summary judgment in Star's favor on the issue of liability for punitive damages under Fed.R.Civ.P. 56(f)(1). Star requests that such a judgment in its favor be entered after the Court provides notice to the EEOC and a reasonable time to respond. If the Court so determines, it would be appropriate for Star to have an opportunity to reply to any response from the EEOC on this point.

### (3) The EEOC's motion does not address or seek entitlement to equitable relief.

If a court finds that an employer has intentionally engaged in an employment practice made unlawful by Title VII, the court may award equitable relief, including injunctive relief and back pay. 42 U.S.C. §2000e-5(g). However, the conclusion that an employer was intentionally engaging in an unlawful employment practice does not necessarily warrant the awarding of injunctive relief and back pay. *Williams v. General Foods Corp.*, 492 F.2d 399, 407 (7th Cir. 1974). Whether equitable relief is granted depends on a balancing of equities. Further, with respect to injunctive relief, a discriminatory practice may have been terminated so that it would be appropriate to deny injunctive relief. *Id.* For example, the EEOC asserts that in 2014, a driver informed Star that he could not transport alcohol due to his religion and Star agreed not to assign him loads with alcohol. (EEOC's Undisputed Material Fact No. 35). Mohamed and Bulshale were terminated in August 2009. The passage of time without additional violations indicates that injunctive relief may not be appropriate. *E.g., United States Equal Opportunity Commission v. Clayton Residential Home, Inc.*, 874 F.Supp. 212, 215-16 (ND Ill. 1995).

In its Motion, the EEOC does not address or argue entitlement to equitable relief. It seeks only a determination of liability for "damages." Star's admission of the Motion with respect to

14

compensatory damages does not entitle the EEOC to injunctive relief. Moreover, the EEOC has failed to make any argument or showing that it is entitled to injunctive relief.

### D.   Conclusion

Star admits the EEOC's Motion as to liability for compensatory damages and failure to mitigate such damages only and agrees that a trial is necessary with respect to the existence of any such damages. Star requests judgment in its favor on the issue of punitive damages after the Court notifies the EEOC that it is considering the issue and provides the EEOC with an opportunity to respond and, if appropriate, for Star to reply. There should be no determinations made with respect to entitlement to equitable relief based on the EEOC's Motion.

Respectfully submitted,

Star Transport, Inc., Defendant.

By:  /s/ William R. Kohlhase
William R. Kohlhase – IL Bar No. 1500589
Miller, Hall & Triggs, LLC
416 Main Street, Suite 1125
Peoria, Illinois  61602
Telephone:  (309) 671-9600
Facsimile:  (309) 671-9616
Email:  william.kohlhase@mhtlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: John C. Hendrickson, Diane I. Smason, Aaron R. DeCamp, June Wallace Calhoun, Equal Employment Opportunity Commission.

  /s/ William R. Kohlhase
William R. Kohlhase – IL Bar No. 1500589
Miller, Hall & Triggs, LLC
416 Main Street, Suite 1125
Peoria, Illinois  61602
Telephone:  (309) 671-9600
Facsimile:   (309) 671-9616
Email:  william.kohlhase@mhtlaw.com