E-FILED
Tuesday, 20 October, 2015  12:13:27 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>STAR TRANSPORT, INC. and STAR LEASING SERVICES, LLC<br><br>Defendants. | Case No. 13-cv-01240-JES-TSH |

**[PROPOSED] PRE-TRIAL ORDER**

This matter having come before the Court at a pre-trial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure and Local Rule 16.1; and Aaron DeCamp, Diane Smason, and June Calhoun having appeared as counsel for the plaintiff; and William Kohlhase having appeared as counsel for the defendant; the following action was taken:

**I.   NATURE OF ACTION AND JURISDICTION**

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.*, to correct unlawful employment practices on the basis of failure to provide religious accommodations resulting in termination, and to provide appropriate relief to Mahad Mohamed and Abdikarim Bulshale, who were adversely affected by such practices. The jurisdiction of the Court is not disputed.

**II. JOINT STATEMENT**

**A.   JURISDICTION**

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to § 706(f)(1) and § 706(f)(3) of Title

VII, as amended, 42 U.S.C. §2000e-5(f)(1) and §2000e-5(f)(3), and § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981A.

### B. UNCONTESTED ISSUES OF FACT

1. Defendant Star Transport has admitted, and the Court has found, [1] that it is liable under federal law to Mr. Bushale and Mr. Mohamed for such compensatory damages as either of them may prove resulted from the termination of their employment because they refused to transport alcohol due to their religious beliefs.

2. The Plaintiff, the United States Equal Employment Opportunity Commission ("EEOC"), is an agency of the United States Government that is responsible for the enforcement of the Title VII of the Civil Rights Act, and is authorized to bring this action.

3. The Defendant, Star Transport, Inc. ("Star Transport"), is an Illinois corporation, and at all relevant times was a corporation doing business in the Central District of Illinois.

4. At all relevant times, Star Transport was an employer within the meaning of Title VII.

5. At all relevant times, Mr. Mohamed and Mr. Bulshale were employees of Star Transport within the meaning of Title VII.

6. In at least 20 calendar weeks in the year 2008, Star Transport had more than 500 employees.

7. In 2009, Star Transport had 1,150 employees.

8. All conditions precedent to the filing of this suit have been fulfilled.

9. Mahad Abass Mohamed legally changed his name from Mahad Abdi Aden on April 19, 2011 when he became a naturalized citizen of the United States.

10. Abdikarim Hassen Bulshale legally changed his name from Abdikarim Abdallah Ismail in 2010 when he became a naturalized citizen of the United States.

---

[1] Text that is red-lined represents a disagreement between the parties.

11. On September 8, 2009, Mahad Mohamed filed a Charge of Discrimination with the EEOC alleging that Star Transport was discriminating against him on the basis of his religion.

12. On October 2, 2009, Abdikarim Bulshale filed a Charge of Discrimination with the EEOC alleging that Star Transport was discriminating against him on the basis of his religion.

13. Mr. Mohamed is a Muslim. He studied the Koran in Kenya for seven years.

14. Mr. Mohamed lived as a Somali refugee in Kenya for twelve (12) years before being resettled to the United States in 2006.

15. Mr. Bulshale is a Muslim. He studied the Koran in Somalia.

16. Mr. Bulshale spent seven (7) years in an Ugandan refugee camp before being resettled to the United States in 2001.

17. Mr. Mohamed's religious beliefs prohibit him from transporting alcohol.

18. Mr. Bulshale's religious beliefs prohibit him from transporting alcohol.

19. Mr. Mohamed started working for Star Transport on April 28, 2009.

20. Mr. Bulshale started working for Star Transport on January 15, 2008

21. Mr. Mohamed informed Star Transport of his religious prohibition against transporting alcohol when he refused to transport a load containing beer on July 28, 2009.

22. Mr. Bulshale informed Star Transport of his religious prohibition against transporting alcohol when he refused to transport a load containing beer on August 8, 2009.

23. Star Transport understood that when Mr. Bulshale and Mr. Mohamed informed the company of their prohibition against transporting alcohol, that they were communicating their need for a religious accommodation.

24. Star Transport could have accommodated Mr. Mohamed's and Mr. Bulshale's religious prohibition against transporting alcohol.

25. Star Transport's application of its "forced dispatch" policy was the stated reason for Mr. Mohamed and Mr. Bulshale's termination.

26. Star Transport's "forced dispatch" policy is only mentioned once in its employee handbook.

27. Employees who violated Star Transport's "forced dispatch" policy could be subject to the company's progressive discipline policy.

28. No other drivers were discharged for violating Star Transport's "forced dispatch" policy in the 12 months before Mr. Mohamed's termination.

29. Mr. Mohamed was not terminated based on the costs associated with his failure to deliver alcohol.

30. Star Transport terminated Mr. Bulshale and Mr. Mohamed on August 11, 2009.

31. The recommendations to terminate Mr. Bulshale and Mr. Mohamed were made on August 11, 2009.

32. Mr. Mohamed and Mr. Bulshale had not been disciplined by Star Transport for any reason prior to their refusal to transport alcohol for religious reasons.

33. Star Transport terminated Mr. Mohamed because he "refused beer [load] due to religious convictions."

34. Previous job performance, attendance and/or low production were not factors in Mr. Mohamed's termination.

35. Star Transport has not conducted any investigation into the cost associated with Mr. Mohamed's or Mr. Bulshale's failure to transport alcohol.

36. Prior to their terminations, and after they notified Star Transport of their religious prohibition against transporting alcohol, Star Transport made no effort to discuss with Mr. Mohamed or Mr. Bulshale accommodations for their religious beliefs.

37. Star Transport has no written policy allowing employees to request reasonable accommodations for their religious practices.

38. Star Transport employs a progressive discipline policy for actions by employees that have a negative effect on safety or productivity. The progression is as follows: 1st offense is a verbal reprimand, 2nd offense is a written reprimand and possible suspension, 3rd offense release from employment.

39. Prior to Mr. Mohamed's and Mr. Bulshale's terminations, Star Transport did not inform them that they would be terminated for refusing the load containing alcohol.

40. Miller Brewing Company was Star Transport's only client that required the transportation of alcohol.

41. Star Transport has no evidence of any costs or fines levied against it by Miller Brewing Company for Mr. Mohamed or Mr. Bulshale refusing to transport the beer loads.

42. Star Transport's computer system allows it to attach notes to a driver's code that would alert the dispatcher to any restrictions or accommodations needed for the driver.

43. In 2007, Star Transport carried 66,130 total loads, of which it could not identify a single load containing alcohol. In 2008, Star Transport carried 61,138 total loads, of which only one (1) contained alcohol. In 2009, Star Transport carried 15,636 loads, of which only 474 contained alcohol.

44. It took 2.25 hours for a replacement driver to arrive at Miller Brewing Company to carry the load originally assigned to Mr. Mohamed. It took 3.25 hours for a replacement driver

to arrive at Miller Brewing Company to carry the load originally assigned to Mr. Bulshale.

45. In December 2008 or January 2009, Edward Briggs became Star Transport's Human Resources Manager.

46. Mr. Briggs received no training before or after becoming the Human Resources Manager.

47. As Human Resources Manager, Mr. Briggs received no training from Star Transport on antidiscrimination laws.

48. Mr. Briggs, Star Transport's Human Resources Manager at the time of Mr. Mohamed and Mr. Bulshale's terminations, was not aware of any exceptions to Star Transport's "at will" employment policy, nor had he ever heard of Title VII of the Civil Rights Act.

49. Mr. Briggs "didn't have an understanding" of the company's obligation to accommodate an employee's religious beliefs, and he never researched the matter.

50. Mr. Briggs never provided a religious accommodation during his tenure as Human Resources director.

51. Gene Ozella was Star Transport's personnel manager from 2008 to 2011. As personnel manager Mr. Ozella received no training from Star Transport on antidiscrimination laws.

52. Gene Ozella recommended to Mr. Briggs that Mr. Mohamed and Mr. Bulshale be terminated.

53. Star Transport did not consider it a violation of the "forced dispatch" policy if, after a load had been assigned, a driver fell ill or had a medical condition preventing him/her from completing the assigned load.

54. Star Transport did not consider it a violation of the "forced dispatch" policy if, after a load had been assigned, a driver could not deliver a load because of Department of

Transport regulations.

55. Exceptions to the "forced dispatch" policy included the following: family emergency, illness, sickness, illness or sickness in the family, and bereavement.

56. Star Transport has innovative software and designated dispatchers that allow it to find replacement drivers.

57. Star Transport did not investigate the allegations of discrimination and termination of Mr. Mohamed.

58. Gene Ozella and Edward Briggs had the authority to accommodate Mr. Mohamed and Mr. Bulshale.

59. There were occasions where employees violated the "forced dispatch" policy and they were not terminated.

60. Star Transport has no written policy explaining any possible exceptions to the company's "forced dispatch" policy.

61. Star Transport continued to assign Mr. Mohamed loads between the date that he refused the beer load, July 28, 2009, and the date of his termination, August 11, 2009.

62. Star Transport "was always swapping" loads between drivers, sometimes with no notice. Such swaps would happen on a daily basis.

63. If a driver is unable to deliver a load for religious reasons, they should first contact their dispatcher to notify him/her of the situation.

64. Both Mr. Bulshale and Mr. Mohamed called their dispatcher when they found out that they were assigned a load containing alcohol.

65. It took Mr. Bulshale one month to find employment after being terminated by Star Transport.

66. It took Mr. Mohamed one month to find employment after being terminated by Star Transport.

67. In 2014, another driver at Star Transport informed the company that he could not transport alcohol due to his religion. Star Transport allowed him to continue driving for the company and agreed to not assign him loads with alcohol.

68. In 2009, Mr. Bushale was employed by Star Transport from January 1 through August 11 during which time he earned $12,472.

69. In 2009, Mr. Mohamed was employed by Star Transport from April 28 through August 11 during which time he earned $5,590.

### C. CONTESTED ISSUES OF FACT

1. Whether Mr. Mohamed informed Star Transport of his religious prohibition against transporting alcohol at or around the time he was hired.

2. Whether Mr. Bulshale informed Star Transport of his religious prohibition against transporting alcohol at or around the time he was hired.

3. The amount of lost wages caused by Star Transport's termination of Mr. Mohamed.

4. The amount of lost wages caused by Star Transport's termination of Mr. Bulshale.

5. Whether Mr. Mohamed experienced pain and suffering as a result of the discrimination, and if so what amount of compensatory damages would fairly compensate him for pain and suffering resulting from the discrimination.

6. Whether Mr. Bulshale experienced pain and suffering as a result of the discrimination, and if so what amount of compensatory damages would fairly compensate him for pain and suffering resulting from the discrimination.

D. **CONTESTED ISSUES OF LAW**

Whether Star Transport acted with malice or reckless indifference to the federally protected rights of Mr. Mohamed and Mr. Bulshale.

E. **JURY DEMAND**

The EEOC requests a jury trial on compensatory and punitive damages. Back pay and the determination of injunctive relief should be determined by the Court.

### III. PLAINTIFF'S STATEMENT

A. **ITEMIZED STATEMENT OF DAMAGES**

For both Mr. Mohamed and Mr. Bulshale, EEOC is seeking one month of back-pay starting from August 11, 2009. EEOC also seeks compensatory damages for pain and suffering experienced by Mr. Mohamed and Mr. Bulshale since August 11, 2009; and punitive damages.[2] Although a jury may not be informed of the limitations on compensatory and punitive damages provided by statute, EEOC understands that the total amount of compensatory and punitive damages entered as a judgment may not exceed $300,000 per person. *See* 42 U.S.C. § 1981a(b)(3), (c)(2).

EEOC also seeks injunctive relief, including: (i) a permanent injunction enjoining Star Transport, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice that violates Title VII, including failing to provide religious accommodations; (ii) a permanent injunction requiring Star Transport to institute and carry out policies, practices, and programs which eradicate the effects of its past and present unlawful employment practices; and (iii) such further relief as the Court deems necessary and proper, including, without limitation, an order requiring Star Transport to provide its managers

---

[2] In the Complaint, EEOC sought pre-judgment interest on the monetary damages in this case. However, Mr. Mohamed and Mr. Bulshale's religious beliefs prohibit them from collecting interest, so EEOC is dropping its claim for pre-judgment interest on their behalf.

and human resources staff with training on Title VII, post a notice advising employees of the outcome of this action, and keep records of requests for reasonable accommodation and make periodic reports to the EEOC regarding the handling of such requests.

The EEOC also seeks an award of its costs in this action.

## IV. EXHIBITS ATTACHED

The following are attached as exhibits to this order and are made a part hereof:

A.  Stipulation of Uncontested Facts and Issues of Law (signed by both parties)

B.  Plaintiff's Witness List

C.  Joint Designations of Deposition Testimony

D.  Defendant's Witness List

E.  Plaintiff's Exhibit List

F.  Defendant's Exhibit List

G.  Jointly Proposed Jury Instructions (minus Instruction 3.13)

H.  EEOC's Proposed Instruction 3.13

I.  Defendant's Proposed Instruction 3.13

J.  EEOC's Proposed Verdict Form

K.  Defendant's Proposed Verdict Form

## GENERAL ADDITIONAL

The following additional action was taken: Star Transport's Answer contained four items denominated as affirmative defenses. The fourth such item was conceded by Defendant in its Response to EEOC's Motion for Summary Judgment.

IT IS UNDERSTOOD BY THE PARTIES THAT

Neither party will call any expert witnesses.

Any Trial Brief or Motions in limine must be filed no later than September 16, 2015.

A party may supplement a list of witnesses or exhibits only upon good cause shown in a motion filed and served upon the other parties prior to trial; except that, upon the development of testimony fairly shown to be unexpected, any party may, with leave of court, call such contrary witnesses or use such exhibits as may be necessary to counter the unexpected evidence, although not previously listed, and without prior notice of any party.

It is mutually estimated that the length of trial will not exceed 3 full days. The case will be listed on the trial calendar to be tried when reached.

Once a final version of this order has been approved by the Court, it may be modified at the trial of the action, or prior thereto, only to prevent manifest injustice. Such modification may be made either on motion of counsel for any party or on the Court's own motion.

Any additional proposed jury instructions shall be submitted to the Court within five days before the commencement of the trial, but there is reserved to counsel for the respective parties the right to submit supplemental proposals for instructions during the course of the trial or at the conclusion of the evidence on matters that could not reasonably have been anticipated.

IT IS SO ORDERED.

s/ James E. Shadid

James E. Shadid        10-20-15
United States District Judge

APPROVED AS TO FORM AND SUBSTANCE:

/s/ Aaron R. DeCamp                              Date:  9/16/15
Aaron R. DeCamp
June Calhoun
Diane I. Smason
Attorneys for Plaintiff
U.S. Equal Employment Opportunity Commission
500 W. Madison St., Ste. 2000
Chicago, IL  60661

/s/ William R. Kohlhase (w/ consent)             Date:  9/16/15
William R. Kohlhase
Attorney for Defendant
416 Main Street, Suite 1125
Peoria, IL 61602-1161